UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL A. HOGLE, | ) NO. EDCV 04-0516-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| | ) |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on May 7, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for supplemental security income benefits ("SSI"). On June 2, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on January 5, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision and directing the payment of benefits or, alternatively, remanding the case for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on July 10, 2002. (Administrative Record ("A.R.") 69-75.)  Plaintiff claims to have been disabled since March 26, 2002, due to diabetes mellitus, hypertension, an anxiety disorder, and a depressive disorder, not otherwise specified. (A.R. 12, 69, 84.)  Plaintiff has past relevant work experience as a clerk checker, cashier, and night stocking clerk.  (A.R. 12.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  (A.R. 43-54.)  On November 20, 2003, Plaintiff, who was represented by counsel, appeared personally and testified at a hearing before Administrative Law Judge Peter Valentino ("ALJ").  (A.R. 21-42.)  In a January 27, 2004 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council denied Plaintiff's request for review of that decision.  (A.R. 8-19, 4-6.)

**SUMMARY OF ADMINISTRATIVE DECISION**

At the November 20, 2003 hearing, the ALJ elicited testimony from Plaintiff, and from Joseph Mooney, a vocational expert.  (A.R. 21-42.)

In his January 27, 2004 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 26, 2002, her alleged onset date.  (A.R. 18.)  He found that Plaintiff is a "younger individual," within the meaning of 20 C.F.R. § 416.963, and has 12 years of formal education.  (A.R. 19.)  He found that Plaintiff has "severe" impairments, consisting of diabetes mellitus, hypertension, an anxiety

disorder, and a depressive disorder, not otherwise specified, but she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (A.R. 18.) The ALJ found that Plaintiff had the following residual functional capacity:

> [Plaintiff] retains the physical residual functional capacity to perform a light level of work activity.[1] [Plaintiff] can lift and carry twenty pounds occasionally and ten pounds frequently. [Plaintiff] would be able to sit or stand and/or walk approximately six hours in an eight-hour workday, occasionally stoop and would be able to use arms or hands for grasping, holding, and turning objects. [Plaintiff's] mental impairment results in a mild restriction of her activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence and pace. [Plaintiff] retains the mental residual functional capacity to perform simple, repetitive tasks with limited public contact.

(*Id.*)

The ALJ further found that Plaintiff's subjective complaints "are not credible to the extent alleged and are rejected for the reasons stated in the rationale portion of this decision, which are incorporated

---

[1] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 416.967(b), 404.1567(b).

3

by reference herein." (A.R. 18.) The ALJ found that Plaintiff could not perform her past relevant work as a clerk checker, cashier, or as a night stocking clerk. (A.R. 19.) Based upon the testimony of the vocational expert, he found that Plaintiff could perform other jobs in the national economy, such as a hand packager, simple assembly person, or bundler.[2] (*Id.*) Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary

---

[2] The ALJ also used Rule 202.21 of the Medical-Vocational Guidelines (the "Grids") as a framework, which directs that a person who is a "younger individual," who is a "high school graduate or more" and is who is "skilled or semi-skilled" with no "transferable" skills, is not disabled.

4

of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  The Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even if the record reasonably supports more than one rational interpretation of the evidence.  *Id*. at 1041; *see also* Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges two disputed issues.  First, Plaintiff contends that the ALJ improperly failed to consider an opinion of disability submitted by her treating therapist.  Second, Plaintiff contends that the ALJ failed to provide a complete hypothetical question to the vocational expert. (Joint Stip. at 2.)

**A.   The ALJ Did Not Improperly Reject An "Opinion Of Disability" From A "Treating Therapist."**

Plaintiff's medical records show that, on February 8, 2002, she underwent an intake interview at the San Bernardino County Department of Behavioral Health.  The interview was conducted by Darlene Belisle, M.S., who filled out a five-page intake form. (A.R. 172-76.)  Page five of the form included a section entitled "Dysfunction Rating," in which

the evaluator was directed to check one of four boxes applying Department of Behavioral Health definitions, and to state in a narrative form any "behaviors supporting rating." Ms. Belisle checked the box marked "severe" and, where required to delineate the "behaviors supporting" this assessment, wrote simply "unable to work." (A.R. 176.)

Plaintiff contends that the ALJ erred in failing to consider this "important opinion of disability" rendered by Ms. Belisle, who she labels her "treating therapist." Plaintiff concedes that Ms. Belisle is not an acceptable medical source, but argues that the ALJ was required to consider this "opinion" under 20 C.F.R. § 416.913(d)(1). (Joint Stip. at 3.)

The ALJ addressed Ms. Belisle's intake evaluation as follows:

> [Plaintiff] also alleged disability due to a mental impairment. On February 8, 2002, [Plaintiff] underwent an intake evaluation at the San Bernardino County Department of Behavioral Health by Darlene Belisle, M.S. [Plaintiff] reported that her ex-husband had mentally and physically abused her, which has caused her to be tearful, anxious, scared, [and to have] no self-esteem and self-doubt. [Plaintiff] reported that she needed to apply for SSI and that she was depressed, tearful and withdrawn. During the mental status examination [Plaintiff] was noted to be shaky and tearful, however her speech was coherent and organized, her intellectual functioning was estimated at average, [and] no cognitive deficits were noted. [Plaintiff] did report some

1  immediate and remote memory problems, forgetting conversations
2  in the past and dates and times. [Plaintiff] also reported
3  some auditory hallucinations, hearing voices of conflict
4  inside her head; however her thought-processes were coherent
5  and organized with no delusions present and average insight
6  and judgment. [Plaintiff's] mood was reported as depressed,
7  anxious and elevated with overwhelming sadness, but there was
8  no mania or hypomania present and her affect was appropriate
9  (Exhibit 5F).

11 (A.R. 14.)

13 The ALJ also discussed the pertinent medical records from
14 Plaintiff's treating psychiatrist at the San Bernardino County
15 Department of Behavioral Health. Eleven days after Ms. Belisle's intake
16 evaluation, Plaintiff was examined by Inderjit Seehrai, M.D. Although
17 Dr. Seehrai had signed off on Ms. Belisle's February 8, 2002 "diagnosis"
18 that Plaintiff's Global Assessment of Functioning score was 50[3] (A.R.
19 169), Dr. Seehrai rendered a different opinion once he personally
20 examined Plaintiff. As the ALJ noted, Dr. Seehrai stated, *inter alia*,
21 that Plaintiff reported *no* audio or visual hallucinations, paranoia, or
22 "flight of ideas," and was able to recall two of three items given, the
23 current and last president's names, and perform serial threes. Dr.
24 Seehrai assessed Plaintiff with a GAF of 60, consistent with moderate

---

[3] A GAF of 41 to 50 involves "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) ("DSM-IV").

symptoms.[4]  (A.R. 14, 170-71.)

The ALJ next discussed the Mental Disorder Questionnaire form completed by Dr. Seehrai on November 26, 2002. (A.R. 158-62.) The ALJ discussed the findings made by Dr. Seehrai, including, *inter alia*, the assessment of a GAF of 55 for Plaintiff and the diagnosis that Plaintiff has depressive disorder with psychotic features, not otherwise specified. (A.R. 14.) The ALJ also discussed a Work Capacity Evaluation (Mental) form Dr. Seehrai completed on May 4, 2003. (A.R. 201-02.) As the ALJ noted, Dr. Seehrai "opined that [Plaintiff] would not face any more than moderate difficulties in any work-related task and only slight to no difficulty with many tasks." (A.R. 15.)

The Court concludes that the ALJ's error, if any, in failing to specifically mention, within his discussion of Ms. Belisle's intake evaluation, the portion on the last page rating Plaintiff's "dysfunction" as "severe" and noting she is "unable to work" does not require either reversal or remand. *See, e.g.,* Batson v. Commissioner of the Social Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004)(applying harmless error rule and concluding that ALJ error which does not negate the validity of the ALJ's ultimate conclusion is harmless and, therefore, does not warrant reversal).

As a threshold matter, Plaintiff's contention that Ms. Belisle's February 8, 2002 intake assessment constitutes an "opinion of

---

[4] A GAF of 51 to 60 involves "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflict with peers or co-workers)." DSM-IV, at 32.

8

disability" by a "treating therapist" is overblown. Ms. Belisle purported to assess Plaintiff's "dysfunction" under San Bernardino County guidelines, not whether she was "disabled" within the standards and requirements of the Social Security Act and related law. Moreover, given that Ms. Belisle performed only an intake evaluation, prior to treatment to be provided by Dr. Seerhai, and did not see Plaintiff again, her characterization as a "treating" therapist is not persuasive. *See* 20 C.F.R. § 416.902 (a treating source is defined as a physician, psychologist or other medical source "who has, or has had, an *ongoing treatment relationship* with" the claimant).

Moreover, even if Ms. Belisle's intake evaluation could be considered to be tantamount to a medical record from a "treating" "other source,"[5] the ALJ did not err in discounting it and, instead, accepting the opinion of Plaintiff's actual treating psychiatrist, Dr. Seehrai. Ms. Belisle based her assessment of "severe" "dysfunction" and inability to work solely on Plaintiff's subjective complaints made at the intake interview -- assertions that the ALJ found to be not fully credible. (A.R. 15-16.) Plaintiff does not dispute the ALJ's finding. Accordingly, given the wholly conclusory nature of Ms. Belisle's "unable to work" statement and the lack of any support for it other than Plaintiff's subjective complaints, the ALJ was entitled to discount it for those reasons -- above and beyond the fact that Ms. Belisle is not

---

[5]   *See* 20 C.F.R. § 416.913(d)(1)("in addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairments) and how it affects you ability to work. . . [such as from] [m]edical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists").

an acceptable medical source. *See* Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999)(a physician's opinion of "disability" that is premised to a large extent upon the claimant's own account of her symptoms and limitations may be disregarded when those subjective accounts have been "properly discounted"); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1985)(ALJ may reject opinion premised upon claimant's properly discounted subjective complaints). *See also* Matney v. Sullivan, 981 F.2d 1016, 1019-20 (9th Cir. 1992)(ALJ's rejection of treating doctor's opinion was proper where the doctor examined the claimant only once and produced a brief report, and the doctor's diagnosis was based primarily upon the medical history and subjective complaints as related by the claimant); Young v. Heckler, 803 F.2d 963, 967-68 (9th Cir. 1986)(treating physician's opinion properly rejected as conclusory and lacking adequate findings to support the opinion that claimant was totally disabled).

Furthermore, as set forth above, the ALJ *did* discuss Ms. Belisle's observations. The ALJ did not fall afoul of any of the requirements regarding the consideration of "other source" evidence set forth in 20 C.F.R. § 416.913(d). The authority on which Plaintiff relies -- Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987), and Bilby v. Schweiker, 762 F.2d 716, 719 n.3 (9th Cir. 1985) -- is inapposite, as both cases involved an ALJ's complete failure to address and/or consider lay witness testimony. This did not occur in Plaintiff's case. Rather, having considered both Ms. Belisle's February 8, 2002 intake evaluation and the records from Dr. Seehrai's treatment of Plaintiff, the ALJ appropriately found the opinion of Dr. Seehrai, a treating psychiatrist, to carry greater weight. (A.R. 15.)

In any event, the ALJ was not required to accept Ms. Belisle's note that Plaintiff was "unable to work," even if it were to be construed as an "opinion of disability." 20 C.F.R. § 404.1527(e)("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.... A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(although the opinion of a treating physician carries great weight, "it is not binding on an ALJ with respect to ... the ultimate determination of disability").

For these reasons, the Court concludes that the ALJ's failure to expressly address the notation on the fifth page of Ms. Belisle's intake evaluation, if it was error at all, was entirely harmless, as that failure does not detract from the ultimate validity of the ALJ's conclusions. Accordingly, Plaintiff's argument that this case should be reversed and remanded, for consideration of Ms. Belisle's "opinion of disability," fails.

**B.   The ALJ's Hypothetical Question To The Vocational Expert Was Proper.**

"If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993)(quoting DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991)). Thus, in posing a hypothetical to a vocational expert, the ALJ must

accurately reflect all of the claimant's limitations. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422-24 (9th Cir. 1987).

The ALJ found that Plaintiff had the mental residual functional capacity to perform "simple, repetitive tasks with limited public contact," based on the State Agency consultant's opinion, which the ALJ found to be consistent with Dr. Seehrai's opinion. (A.R. 15.) In Dr. Seehrai's February 19, 2002 assessment, he noted that: Plaintiff's concentration was decreased, but Plaintiff was "able to perform routine and repetitive tasks"; she had a "moderate impairment to do detailed and complex tasks [secondary to] cane[*sic*]/sedating medication"; and "stress decompensates her leading to [auditory and/or visual hallucinations]." (A.R. 160-61.) In his May 4, 2003 Work Capacity Evaluation (Mental), Dr. Seehrai noted that Plaintiff had "moderate" limitations in her abilities to: maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. (A.R. 201-02.)

The ALJ had the vocational expert read Dr. Seehrai's May 4, 2003 Work Capacity Evaluation and then asked the vocational expert: "Now, if I find that *based upon that residual functional capacity form*, if I find that the claimant is limited to simple, repetitive tasks . . . with limited public contact . . . and a physical exertion of light, can she engage in any of her past work?" (A.R. 40; emphasis added.) The

12

vocational expert responded "no," but stated that Plaintiff could perform other work, such as jobs as a simple assembler, hand packager, and bundlers.  (A.R. 40-41.).  (A.R. 40.)  Plaintiff contends that the ALJ erred by fail to include within that hypothetical the statement from Dr. Seehrai's earlier, February 19, 2002 evaluation form that "stress decompensates her leading to [auditory and/or visual hallucinations]."  Plaintiff contends that this statement was a "significant vocational impediment" that should have been given to the vocational expert.  (Joint Stip. at 5.)

Plaintiff's argument overlooks the effect of Dr. Seehrai's subsequent May 2003 Work Capacity Evaluation.  Rather than describing a specific vocational limitation, Dr. Seehrai's earlier November 2002 statement, that "stress" would cause Plaintiff to "decompensate" and have audio and visual hallucinations, refers to a general emotional response.  In the same document, Dr. Seehrai noted that Plaintiff generally keeps her appointments, maintains her household, and usually gets along with people, and opined that she is "able to perform routine [and] repetitive tasks" and has a GAF suggesting only moderate symptoms.  (A.R. 160-61.)  By the subsequent May 2003 Work Capacity Evaluation, Dr. Seehrai was required to consider his prior examinations, treatment, and diagnoses of Plaintiff[6] and, based on that history, specifically enumerate what limitations Plaintiff would have in work situations.

---

[6] The evaluation form expressly directed Dr. Seehrai to consider Plaintiff's medical history, his examination of Plaintiff, and prior findings and diagnoses in assessing Plaintiff's "ability to do work-related activities on a day-to-day basis in a regular work setting." (A.R. 201.)  Thus, in rendering his opinion on Plaintiff's work-related limitations, Dr. Seehrai was to consider his prior November 2002 assessment, as appropriate.

13

Having done so, Dr. Seehrai posited limitations consistent with an ability to perform unskilled work. The November 2002 assessment, read as a whole, was not inconsistent with Dr. Seehrai's subsequent evaluation, which specifically addressed work-related limitations, and the ALJ was entitled to infer that the latter evaluation encompassed all of the work-related limitations Dr. Seehrai had found, based on his history of treating Plaintiff. The ALJ is "entitled to draw inferences 'logically flowing from the evidence.'" Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996)(citation omitted).

While Dr. Seehrai's finding that "stress decompensates [Plaintiff], leading to [audio and visual hallucinations]" may reflect one of Plaintiff's symptoms, it is consistent with and reasonably encompassed in the ALJ's mental residual functional capacity finding that Plaintiff was "limited to simple, repetitive tasks with limited public contact." (A.R. 15.) *See* Macri, 93 F.3d at 544 (ALJ did not improperly reject treating doctors' opinions that the claimant was precluded from performing heavy work, needed to find work in which he could change positions as needed, and was limited to light work, because such opinions were consistent with the ALJ's determination that the claimant was capable of performing a "wide range of light work"). Because the ALJ provided the vocational expert with a full set of Plaintiff's specific work-place limitations based on Dr. Seehrai's May 2003 Work Capacity Evaluation, the vocational expert's testimony constituted substantial evidence supporting the ALJ's finding that Plaintiff could perform other work. *See* Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002)(ALJ properly relied upon testimony provided by a vocational expert based on a hypothetical question that directed the vocational expert to

specifically credit a portion of the record which included limitations that the vocational expert had just heard).

For the foregoing reasons, the ALJ did not commit error in his hypothetical to the vocational expert. Accordingly, Plaintiff's second argument also fails.

**CONCLUSION**

For all of the foregoing reasons, the Court finds that neither reversal of the Commissioner's decision nor remand is warranted, and the Commissioner's decision denying benefits is AFFIRMED. Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and of the Judgment on counsel for Plaintiff and counsel for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: September 30, 2005

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE